UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-62005-BB

RYAN TURIZO,

    Plaintiff,

v.

CAMDEN SUMMIT PARTNERSHIP, L.P.,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR DISMISSAL PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant CAMDEN SUMMIT PARTNERSHIP, L.P., by and through its undersigned counsel, hereby files this motion pursuant to FRCP Rule 12(b)(6). Defendant seeks dismissal of Plaintiff's Complaint in full, as the Complaint (Docket #1) fails to state a claim upon which relief can be granted.

**I.**     **Standard for Grant of a Rule 12(b)(6) Motion**

A complaint is properly dismissed upon a 12(b)(6) motion "on the basis of a dispositive issue of law." *Nietzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827 (1989). Dismissal pursuant to a 12(b)(6) motion is also warranted if it does not contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Boyd v. Warden,* 856 F.3d 853, 863 (11th Cir. 2017), *quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). Any inference of a "mere possibility of misconduct" is insufficient for the Plaintiff to prevail on a 12(b)(6) motion. *Iqbal,* 556 U.S. at 678. Factual allegations in the complaint must

"be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  Elevation of the claim from the merely speculative to the requisite facial plausibility to withstand a 12(b)(6) motion will occur only when the Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Inclusive Communities Project, Incorporated v. Lincoln Property Company,* 920 F.3d 890, 899 (5th Cir. 2019).

The Court must view the factual allegations in the Complaint "as true and … in a light most favorable to the plaintiff."  *Boyd* at 863-64.  However, "a legal conclusion couched as a factual allegation" need not be accepted as true.  *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932 (1986); *see also, Iqbal* at 678.  A "'naked assertion' devoid of 'further factual enhancement'" will not allow a complaint to survive a 12(b)(6) motion.  *Iqbal* at 678, *quoting Twombly,* at 557.  With regard to Plaintiff's Complaint, both the lack of relevant factual content and also the "naked assertions" of legal conclusions render the action fatally flawed, and plainly subject to dismissal under this motion.

II. **Plaintiff Claims Unlawful Discrimination Under the Fair Housing Act as Legal Conclusions and Without Factual Support**

Plaintiff's Complaint alleges violation by Defendant of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*  Specifically, Plaintiff, who describes himself as a "tester" seeking only to "enforce fair housing laws," contends he contacted a rental apartment community in Fort Lauderdale, Florida owned by Defendant, known as Camden Las Olas Apartments (the "Community").  Complaint ¶¶ 4, 7.  Plaintiff alleges that he inquired about the application procedures at Camden Las Olas, and was told by Defendant's agent that the Community would

automatically deny any applicant seeking to rent housing at the community who has a "felony criminal record."[1]  Complaint ¶ 8.

Plaintiff does not allege that he himself has a "felony criminal record" of any kind, and specifically denies he was actually looking for rental housing when he inquired at the Community.  Nonetheless, Plaintiff contends just learning of Defendant's alleged "automatic denial" policy resulted in damage to him in the form of discouragement, restriction of housing choice, deprivation of housing opportunity, and various emotional and psychic injuries.  Complaint ¶¶ 9, 12, 13.  Defendant further contends that Defendant's alleged policy of automatic denial of "any prospective individual with a felony criminal record perpetuates segregated housing patterns and discourages and/or obstructs choices in the applicable community, neighborhood, and/or development," depriving *Plaintiff* of housing opportunities he denies he was seeking.  Complaint ¶ 10.

### III.  A Prima Facie Case of Discrimination under the Fair Housing Act Requires Some Showing of Both Fact and Causation

The Fair Housing Act (the "Act") makes it unlawful for any housing provider to "refuse to negotiate for the … rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."[2]  42 U.S.C. §3604(a)(1).  Plaintiff's allegation of discrimination on the basis of Hispanic / Latino "heritage and / or

---

[1] Defendant disputes Plaintiff's characterization of the criminal history screening policy for the Community as described in the Complaint.  Because of Plaintiff's failure to state a prima facie case of unlawful discrimination under the Act, however, this dispute over the details of any screening policy are irrelevant to this motion.

[2] Discrimination in rental, "or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of" disability, is also prohibited by the Act.  42 U.S.C. §3604(f)(1).

descent" would appear to be a claim of discrimination on the basis of national origin, rather than race as alleged in the Complaint.[3]

Significantly, "criminal record" is not a characteristic or class of persons protected by the Act. *Evans v. UDR, Inc.,* 614 F.Supp.2d 675, 691 (E.D. N.C. 2009) ("the FHA clearly does not prohibit landlords from denying a person occupancy on the basis of his criminal record"). Absent evidence that consideration of a criminal record is used as a "pretext" for unlawful discrimination, no discriminatory "purpose" in violation of the Act is shown. Facts supporting a claim of pretext might be, for instance, allegations that a particular screening criterion is applied only to some applicants and not to others, or not as a usual and customary practice, and that the deviation from usual practice correlates to a protected characteristic. *See, e.g., United States v. Collier,* 2010 WL 3881381 at *10 (W.D. La. Sept. 28, 2019).

Alternatively, a facially neutral practice or policy can be challenged under the Fair Housing Act as having an unlawful "disparate impact," because it "has a segregative effect or that it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." *Hallmark Developers, Inc. v. Fulton Cty., Ga.,* 466 F.3d 1276, 1286 (11th Cir. 2006). In 2015, the Supreme Court held that disparate impact claims ("claims asserting an unjustified, disproportionally adverse effect on minorities") are cognizable under the Act. *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* -- U.S. --, 135 S.Ct. 2507 (2015) (*"Inclusive Communities"*). The Supreme Court recognized that since the Act makes it unlawful to "otherwise make unavailable or deny" housing because of a protected class, disparate impact claims that focus on the "results" of a housing practice must be included as part of the Act's "central purpose … [of] eradicat[ing]

---

.

discriminatory practices" in the United States. *Id.* at 2521. But the Court also recognized that a disparate impact claim of discrimination could pose a danger of "displac[ing] valid governmental and private priorities" with a solely race-based decision, such as the adoption of "numerical quotas." *Id.* at 2522-24. To safeguard against that danger, the Supreme Court in *Inclusive Communities* made clear that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* This mandate to show a "*robust causality* ... ensures that '[r]acial imbalance … does not, without more, establish a prima facie case of disparate impact." *Id.*

Even before the Supreme Court's decision in *Inclusive Communities,* however, the Eleventh Circuit had already held that at least some "relevant statistical showing" is the minimum required to support a disparate impact claim of discrimination under the Act. In *Schwarz v. City of Treasure Island,* 544 F.3d 1201 (11th Cir. 2008), an operator of halfway houses for recovering alcoholics (considered "disabled" under the Act) alleged that a city's zoning ordinance had a disparate impact on the protected class of people with disabilities. The operator's claim failed and was dismissed, however, because he provided no comparative data to support a prima facie case of disparate impact. The *Schwarz* plaintiff failed to provide "an adequate statistical foundation for a disparate impact claim because he presented no comparative data at all," relying instead on a "bald assumption" that the ordinance's effect on the halfway houses would have a disparate impact on recovering alcoholics. *Id.* at 1217-18.

Under *Inclusive Communities,* therefore, a prima facie case of disparate impact discrimination will fail unless it demonstrates *both* relevant statistical disparity (evidence comparing members of the protected class affected by the challenged policy with non-members affected by the challenged policy), *and also* a plausible showing of "robust causality" between

the challenged policy and that statistical disparity. *Inclusive Communities* at 2522-2523. Succinctly, a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.; see also Oviedo Town Center II, L.L.L.P. v. City of Oviedo, Florida,* 759 Fed.Appx. 828 (11th Cir. 2018) (granting defendants' 12(b)(6) motion to dismiss complaint alleging disparate impact discrimination under the Act).

IV. **Plaintiff's Complaint Fails to State a Claim of Discrimination Under the Fair Housing Act**

Plaintiff blithely concludes in his Complaint that Defendant's alleged policy "regarding the criminal history of applicants seeking to rent, utilize, or otherwise occupy" housing in the Community "is unlawful under the Fair Housing Act, as it has a disparate impact on individuals of Hispanic / Latino heritage and / or descent." Complaint ¶ 11. In the single count of violation of the Fair Housing Act alleged in the Complaint, Plaintiff specifically asserts that "Defendant has violated the Fair Housing Act by, *inter alia*, making unavailable and / or otherwise denying [housing at the Community] to Plaintiff on the basis [*sic*] of *race* and / or *criminal record*." Complaint ¶ 18. As part of that same count, Plaintiff also concludes (without any factual support) that "a discriminatory *purpose*, and not any legitimate reason" motivated Defendant's alleged policy of automatic denial of the application of any person with a felony conviction record.

Plaintiff's allegation that considering the criminal history of housing applicants is motivated by a "discriminatory purpose, and not any legitimate reason" is his attempt to state a claim of "discriminatory treatment" discrimination, presumably on the basis of race.[4] Complaint ¶¶ 18, 19. Plaintiff's only alleged discriminatory act on the part of Defendant is the alleged policy of "automatic denial" of any housing applicant with a felony criminal record. The Complaint includes no facts alleging that housing applicants not of "Hispanic / Latino heritage or descent" or of a certain race are not subject to the same criminal history screening policy. The Complaint also includes no facts alleging that any applicants from a non-protected class are not "automatically denied" for any felony criminal conviction. Absent the allegation of any facially plausible facts that application of criminal history screening is a mere pretext for discrimination because of a protected characteristic, Plaintiff has not stated even a prima facie case of discriminatory treatment under the Act. To the extent Plaintiff's claim is of intentional discrimination, his case must fail as a matter of law.

Similarly, as in the failed claim of disparate impact discrimination in *Schwarz,* Plaintiff here has provided "no comparative data at all" to show that any particular class of people protected by the Act are disproportionately impacted by the challenged policy of criminal history screening. Like the *Schwarz* plaintiff, Plaintiff here makes nothing but a "bald assumption" that the challenged policy is "unlawful," and "has a disparate impact on individuals of Hispanic/Latino heritage and/or descent." Complaint at ¶ 11. Plaintiff not only neglected "to

---

[4] Plaintiff's allegation of discrimination on the basis of "Hispanic / Latino heritage and / or descent" would appear to be a claim of discrimination on the basis of national origin, rather than race as alleged in the Complaint. In the event Plaintiff's Complaint survives this motion to dismiss, Defendant will seek a "more definite statement" as to the basis of the discrimination alleged. FRCP 12(e).

allege facts at the pleading stage or produce statistical evidence" in support of that "bald" conclusion of disparate impact, he has also utterly failed to provide any evidence of the "robust causality" between the challenged policy and the disparate impact claimed. *Oviedo Town Center II* at 835 (upholding trial court's finding of lack of prima facie case of disparate impact). As Plaintiff has not stated even a prima facie claim of disparate impact under the Act, his case must fail.

**V.     Conclusion**

In light of these fatal flaws, Plaintiff's Complaint fails to state a claim for relief under its the sole count: violation of the Fair Housing Act. Since Plaintiff's Complaint does not state even a prima facie case of unlawful housing discrimination, it must be dismissed in its entirety. Defendant therefore respectfully requests this Court grant its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Certificate of Conference**[5]

Counsel for Defendant hereby certifies that on August 28, 2019, Theresa L. Kitay conferred with Jibrael S. Hindi and Thomas J. Patti, counsel for the Plaintiff, via both email and telephone. Ms. Kitay conveyed Defendant's position that the Complaint in this matter was subject to dismissal upon a Rule 12(b)(6) motion, and asked Plaintiff to amend the Complaint pursuant to FRCP 15(a)(1)(A) in an effort to avoid filing this motion. Counsel for the Plaintiff disputed the merits of Defendant's position as stated in this motion.

---

[5] A Certificate of Conference is not technically required by L.R. 7.1(a)(3) for a motion for dismissal for failure to state a claim.

Respectfully submitted this 3rd day of September, 2019.

        *s/ Ryan R. McCain*
Ryan R. McCain, Esq.
Fla Bar ID #28117
RMcCain@barfieldpa.com
Barfield, McCain P.A.
4241 Northlake Blvd., Suite B
Palm Beach Gardens, FL  33410
(561) 650-8139


        *s/ Theresa L. Kitay*
Theresa L. Kitay, Attorney at Law
Ga Bar #424295 *(admitted pro hac vice)*
tkitay@kitaylaw.net
P.O. Box 597
Oak Island, NC  28465
(910) 250-1982

Attorneys for Defendant CAMDEN SUMMIT PARTNERSHIP, L.P.

DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS
CASE NO. 0:19-CV-62005-BB

- 9 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the CM/ECF on September 4, 2019 on all counsel or parties of record on the Service List below.

                                     BY:   *s/ Ryan R. McCain*
                                            Ryan R. McCain, Esq.

## SERVICE LIST

**JIBRAEL S. HINDI, ESQ.**
Email: jibrael@jibraellaw.com
**THOMAS J. PATTI, ESQ.**
Email: tom@jibraellaw.com

The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, FL 33301
Phone: 954-907-1136
Fax: 855-529-9540
Attorneys for Plaintiff, Ryan Turizo